Ballard Spahr LLP

1909 K Street, NW
12th Floor
Washington, DC 20006-1157
TEL 202.661.2200
FAX 202.661.2299
www.ballardspahr.com

Charles D. Tobin
Tel: 202.661.2218
Fax: 202.661.2299
tobinc@ballardspahr.com

Maxwell S. Mishkin
Tel: 202.508.1140
Fax: 202.661.2299
mishkinm@ballardspahr.com

May 3, 2021

***Via Email***

Hon. Beryl A. Howell
Chief Judge
United States District Court for the District of Columbia
333 Constitution Avenue NW
Washington, DC 20001

Case: 1:21–mc–00046
Assigned To : Howell, Beryl A.
Assign. Date : 5/3/2021
Description: Misc.

**Re: Press and Public Access to Video Exhibits in the Capitol Riot Cases**

Dear Chief Judge Howell:

We write on behalf of 14 news organizations that have been reporting on the dozens of cases pending in this District against defendants charged with committing crimes during the January 6, 2021 riot at the United States Capitol.[1] Our clients are concerned about the near-total lack of access to videos of the riot that have been introduced as evidence in these cases, reviewed by the District Court Judges and Magistrate Judges, and become the bases for numerous Court decisions. These videos are judicial records that are presumptively public under the First Amendment to the U.S. Constitution and the common law.

News organizations thus far have attempted to address this issue on a case-by-case basis. We now believe, however, that the problem of timely public access is so widespread that it warrants Your Honor's attention as an administrative concern for the entire District.

We therefore write to elevate the issue for Your Honor's attention and to offer a possible solution based on how the U.S. District Court for the Eastern District of Virginia provided for access to exhibits during the prosecution of Zacarias Moussaoui. Specifically, we propose that Your Honor enter a Standing Order directing the Government to promptly

[1] This letter is sent on behalf of Cable News Network, Inc., American Broadcasting Companies, Inc. d/b/a ABC News, The Associated Press, Buzzfeed, Inc. d/b/a BuzzFeed News, CBS Broadcasting Inc. o/b/o CBS News, Dow Jones & Company, Inc., publisher of The Wall Street Journal, Gannett Co., Inc., Gray Media Group, Inc., National Public Radio, Inc., NBCUniversal Media, LLC d/b/a NBC News, The New York Times Company, Pro Publica, Inc., Tegna, Inc., and WP Company LLC, d/b/a The Washington Post.

release video exhibits to a designated press representative responsible for distributing those videos to other news organizations and making them accessible to the public at large.

Our client ProPublica, an independent, nonprofit news organization, has offered to serve as that press representative. For the reasons below, we would urge Your Honor to give that offer prompt and careful consideration.

## I.
## THE CURRENT LACK OF ACCESS TO VIDEO EXHIBITS

As the Court is aware, since thousands of rioters stormed the United States Capitol, the Department of Justice has charged more than 300 defendants with federal crimes. The Federal Bureau of Investigation is still seeking information about dozens more suspects seen in photographs and videos captured at the Capitol that day. *See, e.g.*, *U.S. Capitol Violence*, FBI, https://www.fbi.gov/wanted/capitol-violence; *Capitol Breach Cases*, Dep't of Justice, https://www.justice.gov/usao-dc/capitol-breach-cases.

According to the Department of Justice, "[t]he investigation and prosecution of the Capitol Attack will likely be one of the largest in American history, both in terms of the number of defendants prosecuted and the nature and volume of the evidence." Mot. to Continue and Exclude Time at 1, *U.S. v. Caldwell*, No. 21-cr-28 (D.D.C. Mar. 12, 2021), Dkt. 73. That evidence includes "more than 15,000 hours of surveillance and body-worn camera footage from multiple law enforcement agencies." *Id.* at 2.

Video captured during the riot has already become among the most critical items of evidence in many of these prosecutions. Prosecutors now routinely play the footage in pretrial detention hearings before District Court and Magistrate Judges and submit the videos as exhibits. Indeed, video evidence has become especially weighty following the D.C. Circuit's decision in *United States v. Munchel*, where the Circuit held that the precise role a defendant played in the riot is significant in determining whether a defendant poses a continuing danger to the community: "[T]hose who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." 2021 U.S. App. LEXIS 8810, at *22 (D.C. Cir. Mar. 26, 2021). Video exhibits have been the best evidence in that determination, both for the Government and for defendants.

Given the understandable public interest in these unprecedented cases, journalists have begun seeking copies of the videos for their reporting. In *United States v. Jackson*, for example, Your Honor granted NBC News's request for copies of "five Video Exhibits—two from security cameras inside the Capitol building, one from a police officer's body-worn

camera, and two from public online sources" that "were played during [defendant's] detention hearing." 2021 U.S. Dist. LEXIS 49841, at *3. (D.D.C. Mar. 17, 2021). As Your Honor concluded, those videos are judicial records subject to a strong presumption of public access because they were submitted to the Court for the purpose of influencing the Court's decision-making. *Id.* at *13-14.

Your Honor made a critical point in the *Jackson* decision that whether these videos have actually been filed on the docket "has no bearing" in the access analysis. *See id.* at *14 n.3. What matters is the "role" that the videos have played "in the adjudicatory process." *Id.* at *14. In the many other cases in this District, the parties have submitted videos to chambers or shown video in Court without filing copies on the docket. The public, as we know the Court appreciates, is entitled to access to these important judicial records as well.

So far, news organizations have sought access to these video records on a case-by-case basis. In addition to the *Jackson* case, this coalition of journalists has sought access to videos that were shown in open court and submitted as exhibits in support of detaining defendant George Tanios before trial. *See In re Application for Access to Certain Sealed Video Exhibits*, No. 21-mc-34 (seeking access to videos in *U.S. v. Tanios*, No. 21-cr-222). The Government initially opposed releasing those videos, only to agree to produce them shortly before a hearing was set to be held on the access motion. *See, e.g.*, Katelyn Polantz, *Justice Department releases video of attack on Capitol Police officer*, CNN (Apr. 28, 2021), https://www.cnn.com/2021/04/28/politics/brian-sicknick-capitol-riot-videos/index.html.

Though the press ultimately received the requested videos, the *Tanios* case is hardly a victory for transparency. The videos were shown in open court on March 22, 2021, yet the press did not receive copies until April 28, 2021.[2] Moreover, while the Government provided the videos directly to our firm, and we distributed them to our clients, as of this writing we are not aware of any way for members of the public to obtain copies of the videos themselves, as they could do for exhibits filed in the ordinary course on the CM/ECF docket.

Indeed, since requesting the videos in the *Tanios* case, we have come to learn that the lack of public access to these judicial records is widespread. In multiple cases, the Government and defendants have expressly relied on video evidence in support of their arguments, but those videos remain largely inaccessible. For example:

- In *United States v. Sabol*, No. 21-cr-35-1, defendant Jeffrey Sabol moved for release from pretrial detention and the Government opposed that motion. In its opposition,

[2] The day before their release, CNN reporter Katelyn Polantz, who originally requested the videos, was kept waiting in the courthouse for hours after the Government had represented that it would make the videos available for viewing, though still not for copying. *See id.*

the Government asserted that "the evidence against the defendant includes [body-worn camera footage] from numerous different officers," which the Government characterized as "objective and unwavering." *See* Opp. to Def.'s Mot. for Pretrial Release at 14, *U.S. v. Sabol*, Dkt. 20. The prosecution and defense actively debated before Judge Sullivan, at an April 8, 2021 hearing, precisely what the video demonstrated. Government counsel stated that "those videos in many ways speak for [themselves] and alone provide ample reason why the defendant should be detained," while defense counsel asserted that "the videos do not speak for themselves in quite the way that [the Government] is saying that they do." *See* Apr. 8, 2021 Hr'g Tr. at 34:22-37:16, *U.S. v. Sabol*. For his part, Judge Sullivan characterized the videos as "shocking," *see id.* at 27:21-28:6, and he specifically referenced the video evidence in his Memorandum Opinion denying defendant's motion for release, *see generally* Mem. Op., *U.S. v. Sabol*, Dkt. 56.

- In *United States v. Mullins*, No. 21-cr-35-4, Magistrate Judge King in the Western District of Kentucky ordered defendant Clayton Ray Mullins to be released before trial, and the Government moved for review of that ruling in this District. At a hearing on March 2, 2021, Your Honor noted that the Government had submitted "videotape evidence" directly to chambers in support of its motion, that both parties "pointed to a lot of video evidence" in support of their arguments, and that Your Honor "looked at all of it, both presented by the defendant and by the government." *See* Mar. 2, 2021 Hr'g Tr. at 2:19-20, 12:9-13, *U.S. v. Mullins*. Your Honor characterized some of that footage as "frightening" and suggested that, if the Government had sought to detain defendant on the basis of danger to the community, "pretrial detention would likely be warranted." *Id.* at 23:18-24:25.

- In *United States v. Whitton*, No. 21-cr-35-5, Magistrate Judge Cannon in the Northern District of Georgia ordered defendant Jack Wade Whitton to be released before trial, and the Government moved for review and revocation of that ruling in this District. Following a hearing on April 12, 2021, Judge Sullivan granted the Government's motion. *See* Mem. Op., *U.S. v. Whitton*, Dkt. 60. Judge Sullivan noted that "[t]he government has proffered a substantial amount of evidence that, at this stage, supports the charges against Mr. Whitton and favors Mr. Whitton's detention pending trial," including "BWC video footage from multiple [Metropolitan Police Department] officers, video footage from publicly available sources, [and] U.S. Capitol surveillance images." *Id.* at 27. Judge Sullivan stated that this "video evidence clearly shows Mr. Whitton not only attacked MPD officers with a crutch, but also that he was the first member of the mob on the lower western terrace to drag an MPD officer from his post under the archway into the crowd, which kicked off terrifying assaults on [two officers], resulting in injury to both." *Id.* at 27-28.

- In *United States v. Fitzsimons*, No. 21-cr-158, the Government moved to detain defendant Kyle Fitzsimons pending trial, and in its motion the Government asserted that

defendant's "violent actions at the Capitol were captured on film, both through body worn camera footage and Capitol building surveillance." *See* Mem. in Supp. of Pretrial Detention at 8, *U.S. v. Fitzsimons*, Dkt. 7. At a hearing on April 7, 2021, which had been continued from the day before so that defense counsel and the Court could review video evidence, Magistrate Judge Harvey noted that he had viewed "a fixed Capitol surveillance camera video and a second video which appears . . . to be the body-worn camera of one of the officers who were in the police line that day." *See* Apr. 7, 2021 Hr'g Tr. at 3:22-4:6, *U.S. v. Fitzsimons*. Magistrate Judge Harvey ultimately ordered the defendant to remain in custody, stating that the video was "pretty clear to [him], about what [defendant] did that day and what happened and also what didn't happen," and that "what that video shows [is] someone who's willing to engage in violence to promote his political beliefs." *Id.* at 22:2-6, 23:14-20.

- In *United States v. Egtvedt*, No. 21-cr-177, the Government moved to detain defendant Daniel Dean Egtvedt pending trial, and in its motion the Government relied on, among other evidence, Capitol Police "surveillance camera videos," as well as "law enforcement body worn cameras." *See generally* Mot. for Pretrial Detention, *U.S. v. Egtvedt*, Dkt. 6. Magistrate Judge Harvey cited that evidence in granting the Government's motion. *See* Order of Detention Pending Trial, *U.S. v. Egtvedt*, Dkt. 7, at 3-4 (referring, *inter alia*, to "body-worn camera footage of Defendant engaging in assaultive conduct inside the Capitol"). The defendant then moved to revoke that order, and at a hearing before Judge Cooper on April 14, 2021, the Government played several videos, pausing throughout to explain key moments. *See* Apr. 14, 2021 Hr'g. Tr. at 43:5-64:1, *U.S. v. Egtvedt*. Judge Cooper noted that he had "viewed all the videos" and that they were "the key consideration" in his decision, which was ultimately to release the defendant. *Id.* at 74:19-78:23.

- In *United States v. McKellop*, No. 21-cr-268, Magistrate Judge Faruqui ordered defendant Jeffrey McKellop to be detained prior to trial, and the defendant moved for revocation of that order. In opposing defendant's motion, the Government incorporated by reference "four video exhibits" that had been "presented at the detention hearing," and the Government argued that those videos "captured" defendant's offenses. *See* Opp. to Def.'s Mot. for Revocation or Review at 1-3, *U.S. v. McKellop*, Dkt. 18. At a subsequent hearing on April 5, 2021, Judge Nichols expressly stated that he had reviewed "the four videos that the Government has relied on as exhibits," noting that the defendant "physically assaulted multiple officers, as reflected in the videos I have watched." Apr. 5, 2021 Hr'g Tr. at 21:22-23:24, 24:24-25:6, *U.S. v. McKellop*. Based in part on those videos, Judge Nichols denied defendant's motion and ordered him to remain in detention pending trial. *Id.* at 26:12-21.

In each of these cases, as in the *Jackson* case, one or both parties submitted video evidence to "influence a judicial decision" and the videos "played a significant and meaningful role in the adjudicatory process." 2021 U.S. Dist. LEXIS 49841, at *13-14

(internal marks omitted). As a result, these videos qualify as judicial records, which "triggers a 'strong presumption in favor of public access'" to them. *Id.* at *14 (quoting *Leopold v. United States*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (Garland, J.). The Government has more recently recognized, in proposing protective orders in multiple riot cases, that any videos that "[a]re, or later become, part of the public court record, including materials that have been received in evidence in . . . public trials or hearings" should automatically be excluded from the order's restrictions. *See, e.g.*, Mem. Op. at 12, *U.S. v. McCaughey*, No. 21-cr-40, Dkt. 39.

To date, however, the press and public have not been able to access these videos on the Court's electronic dockets. While we appreciate the extraordinary workload these prosecutions present to the hardworking Judges and staff of this Court, delayed access to these historic records shuts the public out of an important part of the administration of justice. *See, e.g.*, *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 592 (1980) (Brennan, J., concurring) (noting the importance of "*contemporaneous* review in the forum of public opinion" as "an effective restraint on the possible abuse of judicial power") (emphasis added and citations omitted); *Lugosch v. Pyramid Co.*, 435 F.3d 110, 127 (2d Cir. 2006) (observing that "the public interest encompasses the public's ability to make a *contemporaneous* review of the basis of an important decision of the district court") (emphasis added and citation omitted).

## II.
## A PROPOSAL FOR PROVIDING ACCESS TO VIDEO EXHIBITS

We understand and are grateful that in several of these cases, the Judges of this Court have demonstrated concern with the deprivation of the public rights of access under the First Amendment and the common law. In several cases, the Court has directly asked the Government about making the video evidence available to the public. *See, e.g.*, Apr. 14, 2021 Hr'g Tr. at 5:16-22, *U.S. v. Egtvedt* (Judge Cooper: "I thought that there were discussions at some point about the U.S. Attorney's Office hosting video evidence in the January 6th cases so that the public and the press can access them easily. Is that still a work in progress, or has that been overtaken by the adoption of other means to make those things accessible?"); Apr. 8, 2021 Hr'g Tr. at 17:20-21, *U.S. v. Sabol* (Judge Sullivan: "What portion if any of the videos should be uploaded somewhere?"). The Government, however, has not offered a substantive answer in these cases.

Because the Government has yet to adequately address this issue, we believe that the situation now warrants the leadership of the Chief Judge of the District Court. To that end, we respectfully propose that Your Honor issue a Standing Order for the Capitol Riot cases that provides a uniform method of prompt access to all judicial records in these prosecutions, including video evidence. We offer a suggestion modeled after the approach that the Fourth

Circuit endorsed and the Eastern District of Virginia adopted in *United States v. Moussaoui*. There, press organizations requested contemporaneous access to exhibits that were admitted into evidence and published to the jury in the high-profile trial of a 9/11 co-conspirator. The district court denied the request, in part based on perceived administrative challenges, and the requestors petitioned for a writ of mandamus from the Fourth Circuit, which the court granted in relevant part. *See In re Associated Press*, 172 F. App'x 1, 5-6 (4th Cir. 2006).

As the Fourth Circuit explained, the district court's "administrative concerns" alone were "insufficient to justify a complete denial of access" to the exhibits in question, even where "the administrative burdens facing the district court are enormous." *Id.* at 5-6. That is because "there are ways to ease the incremental administrative burdens that would arise from accommodating their First Amendment right of access, such as providing access to one copy of an exhibit—either through the parties or through the court—and requiring the media to make additional copies at their own expense." *Id.* at 6.[3] The Fourth Circuit accordingly "direct[ed] the district court to adopt a mechanism that will provide the media with one copy of each documentary exhibit that has been admitted into evidence and fully published to the jury," which "should be made available as soon as is practically possible, but in no event later than 10:00 a.m. on the day after the exhibit is published to the jury, or, in the case of an exhibit that is published to the jury in parts, after all parts of the exhibit have been published." *Id.* at 6.

The district court adopted the proposed plan. One of the requestors, The Reporters Committee for Freedom of the Press, agreed to receive and post document and photograph exhibits on its website, while video and audio exhibits were "distributed by the network television pool producer on duty at the Alexandria U.S. District Courthouse – a role the broadcast and cable networks rotate on a daily basis." *See United States v. Zacarias Moussaoui: Information for the Media*, U.S. District Court for the Eastern District of Virginia.[4]

We believe that a similar approach in the Capitol Riots case would adequately address the access issues identified above. To that end, ProPublica, an independent

---

[3] The D.C. Circuit similarly held last year in *Leopold* that "although administrative burden is relevant to how and when documents are released, it does not justify precluding release forever. . . . Production may be time-consuming, but time-consuming is not the same thing as impossible." 964 F.3d at 1133.

[4] An archived copy of the Eastern District of Virginia's *Moussaoui* trial page is available at https://web.archive.org/web/20080516050727/http:/www.vaed.uscourts.gov/notablecases/moussaoui/media.html#exhibits. An archived copy of the Reporters Committee's trial page is available at https://web.archive.org/web/20070208062011/http:/www.rcfp.org/moussaoui/.

nonprofit news organization, has graciously offered to serve as the press representative and take on the responsibility of receiving video exhibits from the Government, coordinating distribution of the videos to other press organizations, and making the videos accessible to the general public.[5]

We believe that, whether through ProPublica acting as a representative of the press or through some other approach, the time has come to address the critical public access issues identified above. At a minimum, we would urge Your Honor to convene a videoconference as soon as practicable to open up a dialogue between the Court and representatives of the press, the Government, and the defense bar on this important topic.

* * *

We greatly appreciate your attention to this letter and your consideration of our proposal. Both as officers of the Court and as advocates for our clients, we would welcome the opportunity to further assist in addressing this important issue in any way we can.

Sincerely yours,

BALLARD SPAHR LLP

Charles D. Tobin
Maxwell S. Mishkin

cc: Hon. Merrick B. Garland, Attorney General of the United States
Channing D. Phillips, Acting United States Attorney for the District of Columbia
A.J. Kramer, Federal Public Defender for the District of Columbia

---

[5] ProPublica is particularly suited for this role, including based on how it has made hundreds of videos from the riot available to the public after those videos were posted on the social media network Parler. *See* Lena V. Groeger et al., *What Parler Saw During the Attack on the Capitol*, ProPublica (Jan. 17, 2021), https://projects.propublica.org/parler-capitol-videos/.