UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

IN RE: PRESS AND PUBLIC            )
ACCESS TO VIDEO EXHIBITS           )    Case No. 1:21-mc-00046-BAH
IN THE CAPITOL RIOT CASES          )

### GOVERNMENT'S RESPONSE TO COURT'S MAY 5, 2021 ORDER

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby responds to the Court's May 5, 2021 Order, directing the government to explain and clarify information pertaining to the Government's Response (ECF No. 3) to the Court's May 3, 2021 Order.

*Sealed Exhibits Used in Pretrial Proceedings*

Specifically, the Court seeks explanation of "(1) the kinds of video exhibits used in pretrial proceedings that are routinely subject to sealing orders [and] (2) the reasons underlying the necessity for sealing those kinds of video exhibits in pretrial proceedings." May 5, 2021 Order. There are two general instances in which the government may seek to file under seal video exhibits in pretrial proceedings related to the Capitol Riot cases. First, the government may seek such orders involving certain video footage from the U.S. Capitol closed-circuit video system. Videos from this system were provided to the Department of Justice by the U.S. Capitol Police – a Legislative Branch agency – under specific conditions, including that the materials not be disseminated outside of a protective order unless necessary to satisfy the government's discovery obligations or for use as evidence in the prosecution of a criminal offense. *See* Declaration of Thomas A. DiBiase at ¶ 12 (March 17, 2021) (Attachment A) (hereinafter "DiBiase Decl.") (attachments omitted).

The Capitol Police's concern with the release of certain video from its closed-circuit camera system is particularly acute, given the possibility "that providing unfettered access to hours

of extremely sensitive information to defendant show have already shown a desire to interfere with the democratic process will result in the layout, vulnerabilities and security weaknesses of the U.S. Capitol being collected, exposed and passed on to those who might wish to attack the Capitol again." *Id.* at ¶ 14. The Capitol Police thus has a strong privacy interest that weighs against further public dissemination of the videos from its closed-circuit video system. *See generally CNN, Inc. v. FBI*, 984 F.3d 114, 120 (D.C. Cir. 2021) ("a district court weighing the fourth *Hubbard* factor should consider whether secrecy plays an outsized role in the specific context"); *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 672 (D.C. Cir. 2017) ("continued confidential treatment of sensitive information is still possible under *Hubbard*"); *In re Sealed Case*, 237 F.3d 657, 666 (D.C. Cir. 2001) (explaining that a statute and the "regulations interpreting the statute create an extraordinarily strong privacy interest in keeping the records sealed"); *United States v. Hubbard*, 650 F.2d 293, 315-16 (D.C. Cir. 1980) ("The public has in the past been excluded, temporarily or permanently, from court proceedings or the records of court proceedings . . . to guard against risks to national security interests").

For many of the same reasons just discussed, the Capitol Police may suffer serious potential prejudice if videos from its closed-circuit camera system are released publicly so that they may be repeatedly copied, studied, and further disseminated. The public's ability "to copy or disseminate such footage would provide the defendants or others to whom it is released with a clear picture of the interior of the Capitol, including entry and exit points, office locations, and the relation of the crucial chambers and areas (such as the Speaker's Office or Majority Leader's Office) to other areas of the Capitol." *Id.* at ¶ 16.  Consequently, the government has sought, and will continue to seek, sealing orders in certain instances involving video from the Capitol Police closed-circuit camera system.  We anticipate that such sealing requests will be limited and sought only in

circumstances where the Capitol Police's legitimate security interests cannot otherwise be protected.

Second, the government may also seek orders sealing video exhibits, or portions of these exhibits, in instances where public access and dissemination would interfere with ongoing criminal investigations,[1] reveal the identities of uncharged individuals, or threaten the safety of the defendant or others. *See Washington Post v. Robinson*, 935 F.2d 282, 291 (D.C. Cir. 1991) (discussing some of these factors in the context of a plea agreement).

*Access to Capitol Riot Video Exhibits*

The Court has also directed the government to clarify "(3) whether the government will make sealed video exhibits submitted in pretrial proceedings available for viewing, not copying or downloading, by the public; (4) whether such video exhibits made available for both viewing and downloading by members of the news media will also be available for both viewing and downloading by the public; and (5) whether the pretrial posture in which the video exhibits are submitted raises any concerns that may warrant consideration of any restrictions on downloading and copying and, if so, what concerns and restrictions should be considered." May 5, 2021 Order.

For the reasons set forth above, the government will not make sealed video exhibits submitted in pretrial proceedings available for viewing, copying, or dissemination by anyone, whether members of the news media or the public.

As for video exhibits that are filed with the court not under seal, the common law right of access to court records and documents extends to members of the news media and the public

---

[1] The Fourth Circuit has stated its "complete agreement with the general principle that a compelling governmental interest exists in protecting the integrity of an ongoing law enforcement investigation." *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 579 (4th Cir. 2004).

equally.  In an effort to alleviate any administrative burden on the court and in order to facilitate the timely dissemination of these unsealed exhibits to members of the news media in a proscribed manner, the government has agreed to offer the option set forth in its Response upon the issuance of a Standing Order by the Court.  *See* ECF No. 3 at 2.  The government will endeavor to facilitate the availability of these unsealed video exhibits for both viewing and downloading by members of the general public as well when feasible.[2]

In terms of whether the pretrial posture in which video exhibits are submitted raises any concerns that may warrant consideration of any restrictions on downloading and copying, the government believes that there should generally be no such restrictions unless the defendant opposes the public dissemination of those videos and can articulate a specific and particularized prejudice to him or her as part of making the requisite showing under *Hubbard*.  *See generally Hubbard*, 650 F.2d at 320-21 ("Thus, the possibility of prejudice to the defendants by sensational disclosure is a factor which may weigh in favor of denying immediate public access. The likelihood of prejudice will in turn depend on a number of factors, including, most importantly, the nature of the materials disclosed.").

As the Court is well aware, the government has charged over 400 individuals in connection with the attack on the U.S. Capitol on January 6, 2021.  Many hundreds of individuals unlawfully entered the U.S. Capitol, and scores of individuals assaulted or impeded law enforcement officers, and damaged property.  National and local news stations across the country and world covered the events of January 6.  In terms of possible prejudice to a defendant from the public release of materials submitted during a detention hearing, the Second Circuit considered this precise issue in

---

[2] For instance, if the number of these types of requests from the general public becomes too voluminous, the government may not have the ability to facilitate the viewing and downloading of these exhibits.

*United States v. Graham*, 257 F.3d 143 (2d Cir. 2001). There, the government played audio and video tapes at a detention hearing involving defendants indicted on drug trafficking charges. *Id.* at 145-46. The defendants argued that, if the press were allowed to copy and broadcast the tapes, it would taint the jury pool and violate their right to a fair trial. *Id.* at 154. The court of appeals rejected that argument, finding that "alternative remedies exist to ensure that the defendants receive a fair trial, ranging from a more searching voir dire to a change of venue[.]" *Id.*

In the overwhelming majority of cases, thorough juror screening and extensive voir dire are sufficient to ensure that all seated jurors can be fair and impartial and to provide a criminal defendant with the fair trial to which she is entitled. *See, e.g.*, *In re Tsarnaev*, 780 F.3d 14, 15 (1st Cir. 2015) ("[A]ny high-profile case will receive significant media attention. It is no surprise that people in general, and especially the well-informed, will be aware of it. Knowledge, however, does not equate to disqualifying prejudice. Distinguishing between the two is at the heart of the jury selection process."). The government thus thinks it unlikely that potential prejudice to a defendant, standing alone, will be sufficient to overcome the presumption in favor of public access in any but the most extreme case.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

BY:     -s-
JOHN CRABB JR.
Chief, Criminal Division
NY Bar No.2367670
DENISE CHEUNG
Acting Deputy Chief, Criminal Division
D.C. Bar No. 451714
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-1794; John.D.Crabb@usdoj.gov
(202) 252-7522; Denise.Cheung@usdoj.gov
