UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE:  PRESS AND PUBLIC ACCESS     )<br>TO VIDEO EXHIBITS IN THE                        )<br>CAPITOL CASES                                       )           No. 1:21-MC-00046-BAH<br>                                                                    ) | |

## OFFICE OF THE FEDERAL PUBLIC DEFENDER RESPONSE

The Office of the Federal Public Defender ("FPD") for the District of Columbia hereby responds to the Court's order on May 4, 2021, directing it to submit views on the petitioner's request to access video exhibits in the Capitol Cases ("Capitol Cases").

The petitioner represents 14 news organizations and proposes that this Court enter a Standing Order directing the Government to promptly release video exhibits to a designated press representative responsible for distributing those video exhibits to other news organizations and making them accessible to the public at large.[1] The government responded to this request on May 5, 2021, and explained that it does not oppose such a Standing Order for video exhibits that are not subject to a sealing order.  *See* Dkt. No. 3.  The government submitted a clarified response on May 6, 2021, explaining the type of video exhibits that it may seek to file under seal and the reasons that it is opposed to releasing such video exhibits. *See* Dkt. No. 5.

For the reasons stated below, the FPD proposes that any Standing Order that this Court issues allow each defendant, in each individual case, be able to contest the release of these video

---

[1] There is some question as to whether or not the petitioner is requesting that all (sealed or unsealed) video exhibits be released.  However, based on the context of its letter, it seems more likely that the petitioner's request is limited to unsealed video exhibits that have been made a part of the public record and that petitioner is simply seeking an administrative solution to obtaining them expeditiously.

exhibits based on each particular case's circumstances. There are considerations that might lead each defense counsel to oppose the release of video exhibits in each of their individual cases. To the extent that there are no objections to the release of these video exhibits in each particular case, the petitioner's proposal to have a streamlined approach for obtaining the video exhibits seems reasonable, but it is a matter for the Court and the United States Attorney's Office to determine the best method for effectuating it.

## I.     Governing Authority

The Supreme Court has recognized that the public has a general right to inspect and copy public records and documents, including judicial records and documents. *Nixon v. Warner Commc'ns*, 435 U.S. 589 (1978). In light of this general right, there is a "strong presumption in favor of public access of judicial proceedings, including judicial records. *Id.* However, there are cases where that presumption may be outweighed by competing interests. *In Re Leopold*, 964 F.3d 1121, 1127 (D.C. Cir. 2020). With regard to judicial records that are subject to a sealing order, the D.C. Circuit Court has instructed courts to use the test set forth in *United States v. Hubbard,* 650 F.2d 293 (D.C. Cir. 1980), when deciding whether these judicial records should be made available to the public by the Court.[2]

## II.    There May be Competing Interests that Warrant a Case-by-Case Determination

There are considerations in each individual case that may lead each counsel to oppose the release of video exhibits in the Capitol Cases. For example, there are scenarios where counsel

---

[2] This balancing test assesses the following factors: "(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings." *Leopold v. United States*, 964 F.3d 1121, 1131 (D.C. Cir. 2020) (quoting *Metlife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661, 665 (D.C. Cir. 2017)).

could argue that disclosure would be highly prejudicial for a variety of reasons. Counsel could raise arguments that disclosure would taint the jury pool or that disclosure of a certain video clip would be prejudicial because it does not contain the whole event but rather a deliberately chosen or edited clip to support a certain argument or narrative. The fact that these cases are in the beginning stages is important, as none of the cases are in the actual trial phase and almost all the videos which petitioner requests have been introduced with respect to detention decisions.

The FPD disagrees with the government's clarified response that presupposes that there would likely be no prejudice to defendants from the public release of materials submitted during a detention hearing. *See* Dkt. No. 5, pp. 4-5. In support of its argument, it cites to a Second Circuit decision involving defendants indicted on drug trafficking charges. However, that case involved defendants indicted on drug trafficking charges where even the Court reasoned that "while the events surrounding the instant case have gained some notoriety, the possibility that the jury pool will become so tainted as to prevent the defendants here from obtaining fair trials is too speculative to justify denying public access." *United States v. Graham*, 257 F.3d 143, 155 (2d Cir. 2001). As the government itself stated in its clarified response, "national and local news stations across the country and world covered the events of January 6." *See* Dkt. No. 5, p. 4. *Graham* is hardly a fair comparison to the notoriety that the Capitol Cases have gained across D.C. and the potential for prejudice caused by media coverage is far greater than a case involving an isolated drug trafficking organization in New York.

The government further stated that any prejudice could be cured by juror screening and extensive voir dire and that it thinks it unlikely that the potential prejudice "will be sufficient to overcome the presumption in favor of public access in any but the most extreme case." *See* Dkt. No. 5, p. 5. Defense counsel could argue that the events surrounding January 6, 2021 and the

media coverage that has since ensued is unprecedented and presents "the most extreme case." The government's arguments are speculation at this point and the analysis should be preserved for the parties in each individual case.

The petitioner proposes a solution similar to what was ordered in *United States v. Moussaoui*, 1:01-CR-455 (LMB).  However, that is just one case where the presiding judge made a particular determination based on an individualized assessment of the facts of that case. Notably, both parties in *Moussaoui* had an opportunity to either object or consent to release of materials.  The petitioner further argues that case-by-case determinations can cause delay in obtaining access to video exhibits and pointed to *United States v. Tanios*, No. 21-cr-222 as an example.  In *Tanios*, a coalition of journalists sought access to video exhibits (including ones subject to a protective order) that were admitted into evidence in support of a detention argument.  *See In re Application for Access to Certain Sealed Video Exhibits*, No. 21-mc-34. The petitioners were ultimately able to obtain access to the video exhibits and both parties had an opportunity to respond.  The petitioner asserts that this was "hardly a victory" because it took approximately one month to obtain the video exhibits.  However, the D.C. Circuit recognized that administrative burden is relevant to "how" and "when" documents are released, even if the court has decided the public has a right of access to them.  *See Leopold*, 964 F.3d at 1133. Although *Tanios* did not involve the same administrative burden as in *Leopold*, the delay was caused because the Court ordered briefing on the issue to make a proper determination.  That process is necessary to protect the rights of all parties involved, and will likely be able to be done more expeditiously in the future.

**III.**     **<u>A Streamlined Approach in Uncontested Cases is Appropriate</u>**

It is understandable that the petitioner is frustrated by logistical struggles that it has had

to overcome in obtaining video exhibits that were not necessarily filed on the docket.[3] To the extent that those videos are not subject to a protective order or another sealing order, that seems to simply be a technical matter that can be resolved.[4] In those cases where video exhibits are not under seal and/or the court has made a determination that the video exhibits should be provided to the press and the public, it is up to the Court to determine the best procedure to provide the materials, and petitioner's suggested method is one way of accomplishing this. A streamlined approach in these scenarios could be created so that the press can avoid having to "hunt down" video exhibits in each case.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

A.J. KRAMER
Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500

---

[3] This can occur simply because there is no method of uploading a video to the ECF/PACER system and so these video exhibits must be provided to the court in a way that is not accessible to the public. That is not intentional and is simply an information technology issue related to filing.

[4] There are many cases where defendants are subject to a protective order which limits their ability to disseminate certain sensitive materials. Defendants are bound by that order until/unless the material is made a part of the public record. If a court orders the release of these materials to the press based on a specific request (such as in the *Tanios* case), that would relieve the defendant's responsibility under the protective order.