**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN RE: PRESS AND PUBLIC ACCESS TO VIDEO EXHIBITS IN THE CAPITOL RIOT CASES | Miscellaneous Action No. 21-46 (BAH)<br><br>Chief Judge Beryl A. Howell |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is a letter, dated May 3, 2021, submitted on behalf of fourteen media organizations petitioning for issuance of a Standing Order to provide "a uniform method of prompt access to all judicial records," including video evidence, in cases arising from the violent breach of the United States Capitol on January 6, 2021 ("Capitol Cases"). Pet. to Access Video Exhibits in the Capitol Riot Cases ("Pet.") at 6, ECF No. 1.[1] Petitioners propose a method of providing contemporaneous access to video exhibits used in ongoing pretrial proceedings in Capitol Cases whereby ProPublica, an independent nonprofit new organization would "serve as the press representative and take on the responsibility of receiving video exhibits from the Government, coordinating distribution of the videos to other press organizations, and making the videos accessible to the general public." *Id*. at 8. This proposal is modeled on a plan adopted in another district during a high-profile trial, even though the Capitol Cases are currently in pretrial proceedings.

Both the United States Attorney's Office for the District of Columbia ("USAO-DC") and the Office of the Federal Public Defender ("FPD") were provided an opportunity to respond to

---

[1] This letter was submitted directly to the undersigned Chief Judge, who is authorized to "take such other administrative actions . . . as in . . . her judgment are necessary to assure the just, speedy and inexpensive determination of cases and are not inconsistent with these Rules." D.D.C. LCvR 40.7(h); D.D.C. LCrR 57.14(h). The letter was then docketed as a miscellaneous matter to resolve the issues raised by petitioners in an orderly and transparent manner.

the petition, *see* Min. Order (May 3, 2021); Min. Order (May 4, 2021), and both important

stakeholders in the prosecution and defense of the Capitol Cases have submitted their views, *see*

Gov't's Resp., ECF No. 3; Gov't's Resp. to May 5, 2021 Order of the Court ("Gov't's Suppl.

Resp."), ECF No. 5; Office of the Federal Public Defender Resp. ("FPD Resp."), ECF No. 6.

Petitioners have replied to these submissions, Pet'rs' Reply, ECF No. 7, and the petition is now

ripe for resolution.

## I.   BACKGROUND

Videotape clips showing the conduct of Capitol Case defendants, and others, on January

6, 2021, have been submitted, principally by the government and occasionally by defendants, to

the Court for use in pretrial proceedings—usually detention hearings—in many of these cases.

The video exhibits have originated from multiple sources, including publicly available YouTube

videos, social media postings, seized electronic devices of defendants and associates, body-worn

camera footage of Metropolitan Police Officers, and security camera footage from the U.S.

Capitol Building and grounds.  Still photographs from the video exhibits are frequently presented

in the briefing filed with the Court and, unless ordered to be placed under seal, these filings are

generally available for public and media access on the Federal Judiciary's Case

Management/Electronic Case Filing ("CM/ECF") system.  CM/ECF cannot handle exhibits in a

videotape format, however.  For exhibits, such as videotapes, that cannot be filed on CM/ECF,

the Local Rules of this Court provide, in pertinent part, that:

> Any document, exhibit, or attachment, including sealed material, that (A) is not in
> a format that readily permits electronic filing, such as a map, chart, or DVD, . . . is
> to be maintained in the possession of the attorney or *pro se* party responsible for
> the filing.  Such a filing shall be made available for a party or the Court and must
> be identified in a Notice of Filing filed with the Court.  A document or item filed
> pursuant to this subsection shall be served, if it is necessary to serve it, by mail or
> by hand delivery, unless the parties have otherwise agreed.

D.D.C. LCrR 49(e)(1).

Since January 6, 2021, due to the ongoing COVID-19 global pandemic, public access to the E. Barrett Prettyman United States Courthouse and the William B. Bryant Annex (the "Courthouse") has been subject to restrictions to protect public health and safety, with most district court proceedings being conducted remotely or partially remotely using videoconferencing technology.  *See In Re Modified Restrictions on Access to Courthouse During the Covid-19 Pandemic*, Standing Order No. 21-20 (BAH) (April 2, 2021); *In Re Fourth Extension of Authorization for Use of Video Teleconferencing and Teleconferencing for Certain Criminal and Juvenile Delinquency Proceedings*, Standing Order No. 21-14 (BAH) (March 16, 2021).  Nevertheless, public and media access to court proceedings has been accommodated, including through use of public access call-in lines allowing the public and media to listen to court proceedings as they are occurring and, as of April 5, 2021, members of the media have been able, upon request and as space permits, to view live videoconference streaming of court proceedings from the Courthouse.

When video exhibits are submitted in Capitol Case pretrial proceedings, the presiding judge and participants are able to view the video exhibits either before or during proceedings, but the media and public listening on the public access call-in lines are unable to see the video exhibits.  This limitation has prompted requests from members of the media for access to the video exhibits in several cases, and such requests have been addressed on a case-by-case basis. *See, e.g.*, Order, *United States v. Chansley*, Case No. 21-cr-3 (RCL), ECF No. 30 (D.D.C. Mar. 15, 2021) (directing the Clerk of Court to post video exhibits on the Court's website); *United States v. Jackson*, Case No. 21-mj-115 (BAH), 2021 WL 1026127, at *8 (D.D.C. Mar. 17, 2021) (ordering the government to provide video exhibits to a member of the news media); *see also* Min. Order (Apr. 28, 2021), *In Re Application for Access to Certain Sealed Video Exhibits*, Case

No. 21-mc-34 (TFH) (denying news organizations' motion for access to video exhibits as moot after government released videos in *United States v. Tanios*, Case No. 21-cr-222-2 (TFH)). At the request of the presiding judge, Court staff has also shown video exhibits to members of the media at the Courthouse using copies of video exhibits provided on thumb drives by the USAO-DC.

In the pending petition, the group of fourteen media organizations express frustration with the case-by-case approach to providing media access to video exhibits, explaining that petitioning for the release of video exhibits in individual cases has led to delayed release of those exhibits, *see* Pet. at 3 (citing *In Re Application for Access to Certain Sealed Video Exhibits*, Case No. 21-mc-34 (TFH)), and objecting to the absence of a platform to provide broad and convenient public access to video exhibits in the numerous Capitol Cases in which such exhibits have been presented to the court but are not available to the public, *see* Pet. at 5–6 (collecting cases). Consequently, they seek a standing order directing the government to contemporaneously release copies of video exhibits admitted in pretrial proceedings in the Capitol Cases to a designated press representative, ProPublica, for further distribution to news organizations and to the public at large. *See* Pet. at 7–8.

As noted, both the government and FPD were invited to provide their views on the petition. The government does not oppose petitioners' proposal, but suggests an alternative access method, first discussed with the undersigned Chief Judge on March 24, 2021, long before the petition was filed, whereby the government would create a "drop box" for sharing exhibits with members of the news media. Gov't's Resp. at 2. Video exhibits would be uploaded to the drop box 72 hours after each proceeding "in light of the possible redactions . . . and uploading of voluminous numbers of exhibits." *Id*. The government has alerted the Court that, due to the

Capitol Police's security concerns, the government may seek sealing orders for video footage from the U.S. Capitol closed-circuit video system and for other video exhibits "where public access and dissemination would interfere with ongoing criminal investigations, reveal the identities of uncharged individuals, or threaten the safety of the defendant or others."  Gov't's Suppl. Resp. at 2–3.[2]

FPD cautions that, given the pretrial posture of the Capitol Cases, defendants may be prejudiced if all non-sealed video exhibits are presumptively released to the media for potentially broad coverage, and that case-by-case considerations should inform the scope and nature of public access.  FPD Resp. at 2–3.  In this vein, FPD stresses that "considerations in each individual case that may each lead counsel to oppose release of [such] video exhibits," *id*., pointing to "the fact that these cases are in the beginning stages," potential taint to jury pools, potential prejudice from use of "a deliberately chosen or edited clip to support a certain argument or narrative" rather than presentation of "the whole event," *id*. at 3, such that an individualized "process is necessary to protect the rights of all parties involved," *id*. at 4.  At the same time, FPD states that "[t]o the extent that there are no objections to the release of these video exhibits in each particular case, the petitioner's proposal to have a streamlined approach for obtaining the video exhibits seems reasonable," *id*. at 2, and "it is up to the Court to determine the best procedure to provide the materials," *id.* at 5.

---

[2]    The government explains that the Capitol Police provided the closed-circuit video footage from the U.S. Capitol Building and grounds "under specific conditions, including that the materials not be disseminated outside of a protective order unless necessary to satisfy the government's discovery obligations or for use as evidence in the prosecution of a criminal offense."  Gov't's Suppl. Resp. at 1.  Of course, the fact that documents are subject to a protective order does not obviate the Court's responsibility independently to determine whether the documents may be filed under seal.  *United States v. All Assets Held at Bank Julius Baer & Co.*, Case No. 04-cv-798 (GMH), 2020 WL 7773423, at *3 (D.D.C. Dec. 30, 2020); *see also* D.D.C. LCrR 49(f)(6)(i) (requiring that any document intended to be filed under seal be submitted with a motion to seal).

## II.     LEGAL STANDARD

The D.C. Circuit has explained that "there is a 'strong presumption in favor of public access to judicial proceedings,' including judicial records." *In re Leopold to Unseal Certain Electronic Surveillance Applications and Orders*, 964 F.3d 1121, 1127 (D.C. Cir. 2020) (quoting *United States v. Hubbard*, 650 F.2d 293, 317 (D.C. Cir. 1980). Yet, "not all documents filed with courts are judicial records" subject to this presumption. *Id.* (quoting *SEC v. Am. Int'l Grp.*, 712 F.3d 1, 3 (D.C. Cir. 2013)); *see also Am. Int'l Grp.*, 712 F.3d at 4 (finding consultant reports were not judicial records because district court "made no decisions about them or that otherwise relied on them"); *United States v. El-Sayegh*, 131 F.3d 158, 163 (D.C. Cir. 1997) (finding plea agreement that played no role in any adjudicatory function was not judicial record). Instead, "whether something is a judicial record depends on 'the role it plays in the adjudicatory process.'" *In re Leopold*, 964 F.3d at 1128 (quoting *Am. Int'l Grp.*, 712 F.3d at 3). Documents and other materials filed in court "intended to influence the court" are judicial records. *Id.* at 1128; *see also id.* at 1129 (finding sealed orders, applications for orders and supporting documents in criminal investigation matters, and court dockets for these records, are judicial records); *League of Women Voters v. Newby*, 963 F.3d 130, 136 (D.C. Cir. 2020) (finding that "every part of every brief filed to influence a judicial decision qualifies as a 'judicial record'"); *see also United States v. Graham*, 257 F.3d 143, 151–52 (2d Cir. 2001) (holding that videos played at a pretrial detention hearing are judicial records).

This common law "right to inspect and copy judicial records is not absolute," *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978), and "may be outweighed by competing interests," *In re Leopold,* 964 F.3d at 1127. The Supreme Court has instructed, "the decision as to access is one best left to the sound discretion of the trial court, a discretion to be exercised in

light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599.  The competing interests that may overcome the presumption favoring public access to judicial records have been "crafted [] into a six-factor test" originating in *Hubbard*.  *In re Leopold*, 964 F.3d at 1127.  The *Hubbard* six-factor test "has consistently served as our lodestar" by "ensur[ing] that we fully account for the various public and private interests at stake," *MetLife, Inc. v. Financial Stability Oversight Council*, 865 F.3d 661, 666 (D.C. Cir. 2017), in evaluating motions to seal or to unseal and provide public access to judicial records.

The *Hubbard* test considers:

(1) the need for public access to the documents at issue; (2) the extent of previous public access to the documents; (3) the fact that someone has objected to disclosure, and the identity of that person; (4) the strength of any property and privacy interests asserted; (5) the possibility of prejudice to those opposing disclosure; and (6) the purposes for which the documents were introduced during the judicial proceedings.

*In re Leopold*, 964 F.3d at 1131 (quoting *Metlife*, 865 F.3d at 665); *see also id.* at 1129–30 (explaining that unless "Congress has spoken directly to the issue at hand," the "common-law standard enshrined in the *Hubbard* balancing test" governs "[]sealing decisions" (internal quotation marks omitted) (quoting *Metlife*, 865 F.3d at 669)); *Hubbard*, 650 F.2d at 317–22.

The D.C. Circuit has further explained that in addition to informing whether public access to records is required, relevant considerations may inform "how and when" access to judicial records is provided.  *In re Leopold*, 964 F.3d at 1133; *see also Nixon*, 435 U.S. at 602 (indicating that the balancing of interests would be appropriate to determine whether audio tapes should be made available for release and copying, even where the tapes had been played at trial and transcripts thereof were available).

## III.    DISCUSSION

Petitioners seek more timely and streamlined access to video exhibits in Capitol Cases and, as they correctly point out, these exhibits are undoubtedly judicial records to which the presumption of public access attaches.  Such exhibits have so far played a significant and meaningful role in the adjudicatory process in many of the Capitol Cases, with extensive discussion of these exhibits in the government briefing, showing of the video exhibits prior to or at detention hearings before the Court, and close review of these exhibits by the Court in considering the requisite factors under the Bail Reform Act, 18 U.S.C. § 3142, to make determinations of pretrial release or detention.  *See* Pet. at 4–5 (collecting cases).[3]  As has already occurred in several Capitol Cases, public access to the video exhibits will often be granted as appropriate. *See, e.g.*, Order, *United States v. Chansley*, Case No. 21-cr-3 (RCL), ECF No. 30 (D.D.C. Mar. 15, 2021); *Jackson*, 2021 WL 1026127, at *8.

As noted *supra* Part II, qualifying as a judicial record triggers presumptive but not automatic public and media access to the record.  For example, a judicial record may be placed under seal for good reason and thereby outside the reach of public or media access.  Thus, as the D.C. Circuit has indicated, the *Hubbard* factors can also inform "how and when" access is provided.  Here, petitioners' suggested approach applies a uniform solution that treats all video exhibits in all Capitol Cases the same, allowing full access, copying, and dissemination of all video exhibits in these cases without consideration of the potential prejudice to individual defendants.  In the face of the legitimate concerns raised by FPD, this proposed approach cannot

---

[3]    The fact that the video exhibits may not be filed on the public docket has no bearing on whether they are judicial records, since they are not in a format amenable to filing on the Court's Case Management/Electronic Filing (CM/ECF) system.

be reconciled with the legal standard articulated in *Hubbard* requiring a case-by-case analysis, which is also supported by this Court's Local Criminal Rules.

### A.  Case-by Case Approach for Access to Video Exhibits is Appropriate and Required

Potential objections by individual Capitol Case defendants based on the risk of unfair prejudice pretrial from broad release of video exhibits may weigh in favor of more limited access to this evidence, even if these considerations do not merit sealing.  "[T]he possibility of prejudice to the defendant[] by sensational disclosure is a factor which may weigh in favor of denying immediate public access," *Hubbard*, 650 F.2d at 320–21, and is of particular concern in these cases given their pretrial posture.  Certainly, the events at the U.S. Capitol on January 6, 2021, generally, and the Capitol Cases in particular, have already been the subject of extraordinary attention both nationally and even globally. Given this context, disclosure of video exhibits in individual Capitol Cases may not generate any more prejudicial attention than already attaches to this event.  Nevertheless, disclosure of particularly egregious or inflammatory conduct associated with an individual defendant or a particular video clip that "does not contain the whole event but rather a deliberately chosen or edited clip to support a certain argument or narrative," FPD Resp. at 3, may present sufficient unfair prejudice at this stage that the presiding judge may decide to delay or limit access in some way.  Evaluation of such risks must be carried out on a case-by-case basis.

Petitioners' novel request would provide, by standing order, a default of widespread disclosure, copying, and dissemination in all cases and does not allow for the appropriate consideration and balancing of defendants' interests.  Just as "administrative burden [may be] relevant to how and when documents are released," even where those burdens do not "justify precluding release forever," *In re Leopold*, 964 F.3d at 1133, the risk of prejudice to defendants

may inform the *form* of release even where the right of public access adheres.[4]  Petitioners rely

on *In re Associated Press*, 172 Fed. App'x 1 (4th Cir. 2006), which addressed the

contemporaneous release of trial exhibits presented to the jury in *United States v. Moussaoui*,

Pet. at 7, and model their proposed solution on a plan adopted at that trial, *id.*  Unlike the

evidence at issue in that case, the video exhibits here are being presented in the pretrial context.

Rebroadcasting evidence already shown at trial may present little risk of juror taint, particularly

where the court has "repeatedly instructed the jurors not to expose themselves to media coverage

of the trial," *In re Associated Press*, 172 Fed. App'x at 4, but broad dissemination of critical

evidence that may be used in *future* jury trials requires more delicate balancing.

The government contends that the Second Circuit's decision in *United States v. Graham*,

257 F.3d 143 (2d Cir. 2001), supports broad public release of the documents at issue here.

Gov't Suppl. Resp. at 4–5.  Like the current posture of the Capitol Cases, that case, which

involved drug trafficking charges, addressed the release of video and audio materials submitted

for a detention hearing.  *Graham*, 257 F. 3d at 145.  The Second Circuit observed that "while the

events surrounding the instant case have gained some notoriety, the possibility that the jury pool

will become so tainted as to prevent the defendants here from obtaining fair trials is too

speculative to justify" denying public access.  *Id.* at 155 (internal quotation marks and citation

---

[4]        This was precisely the concern of the district court in *United States v. Mitchell* in denying an applicant's petition to reproduce and distribute copies of the Nixon audio tapes: the district court reasoned that appellants in the criminal cases in which the tapes were used might be prejudiced by the tapes' release, even though members of the public heard the tapes at trial and transcripts of the tapes had been widely distributed.  397 F. Supp. 186, 188–89 (D.D.C. 1975), *rev'd* 551 F.2d 1252 (D.C. Cir. 1976), *rev'd Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978); *see also Mitchell*, 551 F.2d at 1265–66 (MacKinnon, J., dissenting) (supporting the position of the district court). The Supreme Court reversed the D.C. Circuit's holding that the district court's "refusal to permit immediate copying of the tapes was an abuse of discretion," *Nixon*, 435 U.S. at 591, but did so for different reasons since the defendants' appeals had all been resolved, *id.* at 602 n.14.  Nevertheless, the Supreme Court indicated that determining whether to require reproduction of the tapes would normally require "weighing the interests advanced by the parties in light of the public interest and the duty of the courts," *id.* at 602, and implied that potential prejudice to the defendants would be relevant to that inquiry, *id.* at 602 n.14.

omitted).  Consequently, after consideration of the "[c]ountervailing [f]actors to be [b]alanced [a]gainst the [p]resumption of [a]ccess," *id*. at 154, the *Graham* court found that disclosure to the media of audio and video evidence presented at the detention hearing was warranted.  A similar analysis may hold true and dictate the same result in particular Capitol Cases.  In citing *Graham*, however, the government glosses over the key take-away from the Second Circuit's analysis: namely, that the court conducted a case-specific analysis of the evidence and the countervailing factors raised by the defendants to determine whether the presumption of access was overcome.  That analysis is a far cry from a blanket release for copying and broad dissemination proposed by petitioners and endorsed by the government.

The *Hubbard* factors require an analysis based on individual circumstances before requiring, by court order, a policy of broad access and reproduction of Capitol Case video exhibits.  While the need for public access and the role of the video exhibits in informing judicial decisionmaking counsel in favor of disclosure, presumptive release, copying and dissemination of video exhibits submitted in Capitol Cases, without regard to any countervailing factors presented by individual defendants, is not warranted given the individualized nature of the prejudice analysis.  Consideration of the degree and risk of prejudice from widespread release and reproduction of specific video exhibits in particular Capitol Cases is better assessed on an individual basis by the presiding judge.  Additionally, providing, as a default, the opportunity for viewing rather than copying and broader dissemination is appropriate given the potentially prejudicial nature of the exhibits at issue and the necessity for presiding judges to gauge the risk of prejudice in individual cases before approving broader release enabled by downloading and copying of the video exhibits.

### B.  Procedure for Remotely Accessing Video Exhibits

The Local Criminal Rules provide the appropriate procedure both for submitting video exhibits to the Court, with public notice of those filings, and for non-parties to request access to particular materials.  Under this Court's Local Criminal Rule 49(e), filings that are incompatible with the CM/ECF system (such as video exhibits) must "be made available for a party or the Court and must be identified in a Notice of Filing filed with the Court," D.D.C. LCrR 49(e)(1), ensuring that the public knows that such a submission to the Court has been made.  The Local Criminal Rules call for no broader disclosure of the exhibit itself.

The Local Criminal Rules further provide, however, that "[a]ny news organization or other interested person, other than a party or a subpoenaed witness, who seeks relief relating to any aspect of proceedings in a criminal case . . . shall file an application for such relief with the Court."  D.D.C. LCrR 57.6.  A news organization seeking access to filings not publicly available on the CM/ECF system will have notice—because of Local Criminal Rule 49(e)—that such submissions have been made and may file an application for access.  An application for access also provides an opportunity for the parties to articulate for the Court's consideration any countervailing concerns that may overcome the requested access.  To avoid multiple media requests for the same evidence, the Court may simply make clear that the grant of access to a Capitol Case video exhibit to one member of the media applies to all.  This procedure allows for the individualized analysis of prejudice necessary to avoid unwarranted prejudice to criminal defendants.

Standing Order 21-28, released contemporaneously with this Memorandum Opinion and Order, will therefore require the United States Attorney's Office for the District of Columbia to implement its "drop box" technical solution.  As a default, media organizations will be required to file applications, pursuant Local Criminal Rule 57.6, to view exhibits in each individual case.

As space and public health protocols allow, members of the media are also permitted to view live streams of district court proceedings within the Courthouse and may, with the approval of the presiding judge, attend in-person hearings. [5]

### C. Sealing Procedures

In replying to the government's and FPD's representations regarding anticipated sealing of certain exhibits, petitioners also request that any standing order issued by the Court require (1) that the normal sealing procedures established by the Local Criminal Rules apply; (2) that motions to seal be placed on the public docket; (3) that the court allow interested parties to be heard before ruling on any motions to seal; and (4) that any sealing order articulate findings demonstrating that the sealing order "is narrowly tailored and essential to preserve a compelling government interest." Pet'rs' Reply at 6–7 (quoting *Wash. Post*, 935 F.2d at 289).

Parties must, of course, adhere to the Local Criminal Rules, which provide in relevant part that:

> Absent statutory authority, no case or document may be sealed without an order from the Court. A document filed with the intention of it being sealed in an otherwise public case must be filed by electronic means in a manner authorized by the Clerk and shall be accompanied by a motion to seal. The document will be treated as sealed, pending the outcome of the ruling on the motion. Failure to file a motion to seal will result in the document being placed on the public record.

D.D.C. LCrR 49(f)(6)(i). As noted *supra* n.2, the fact that evidence may be subject to a protective order does not obviate the Court's responsibility independently to determine whether the evidence may be filed under seal. *See All Assets Held at Bank Julius Baer & Co.*, 2020 WL 7773423, at *3. Thus, a party must file a motion to seal any video exhibit that it seeks to seal, in

---

[5]    Media requests to view a video stream of proceedings may be submitted here: https://www.dcd.uscourts.gov/contact.

whole or in part, and exhibits will only be sealed upon order of the Court.  This requirement is provided in the Local Criminal Rules and need not be reproduced in the standing order.

The standing order issued by the Court will not include petitioners' proposed language regarding the public filing of and opportunity for comment on sealing motions.  The cited procedure from *Washington Post*, 935 F.2d at 288–89, applies by its own terms to "Sealing Plea Agreements" and acknowledges that in some cases it may be necessary for motions to seal and any district court findings regarding motions to seal to be sealed themselves,  *id.* at 289 nn. 9–10. Moreover, providing notice to interested parties and hearings on sealing orders would be impracticable in the context of pretrial detention hearings, where sealed exhibits may need to be filed shortly before detention hearings, which are statutorily required to be held expeditiously. *See, e.g.*, 18 U.S.C. § 3142(f)(2) (requiring that detention "hearing shall be held immediately upon the person's first appearance before the judicial officer"); *id*. § 3145(a) (requiring that motions for review of a release order "shall be determined promptly"); *id*. § 3145(b) (requiring that motions for review of a detention order "shall be determined promptly").

## IV.  CONCLUSION AND ORDER

For these reasons, petitioners' request for issuance of a standing order to provide a streamlined means in this Court for making video exhibits in Capitol Cases accessible to the media will be granted but, in accordance with applicable law and rules, access to these video exhibits may be authorized after the presiding judge has the opportunity to consider the positions of the parties.  Accordingly, it is hereby

**ORDERED** that the Petition to Access Video Exhibits in the Capitol Riot Cases, ECF No. 1, is GRANTED IN PART AND DENIED IN PART; it is further

**ORDERED** that the Petition to Access Video Exhibits in the Capitol Riot Cases is GRANTED insofar as the Court will issue Standing Order 21-28 providing a procedure for providing media access to video exhibits submitted in Capitol Cases; and it is further

**ORDERED** that the Petition to Access Video Exhibits in the Capitol Riot Cases is in all other respects DENIED.

**SO ORDERED**

Date:  May 14, 2021

_____
BERYL A. HOWELL
Chief Judge